UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MICHIGAN SUGAR COMPANY,

           Plaintiff,           Case Number 06-10160-BC

v.                                                  Honorable Thomas L. Ludington

BAKERY, CONFECTIONERY, TOBACCO,
WORKERS AND GRAIN MILLERS,
LOCALS 259-G, 260-G,

           Defendants.
_____/

## ORDER DENYING DEFENDANTS' MOTION FOR RECONSIDERATION

On January 26, 2007, this Court issued an opinion and order rejecting a report issued by Magistrate Judge Charles E. Binder recommending that the defendants' motion for summary judgment be granted and the plaintiff's motion for summary judgment be denied. The Court summarized its ruling as follows:

> After considering the parties' arguments during the hearing and conducting a *de novo* review of the record in light of the parties' submissions, the Court concludes that the arbitrator's award did not draw its essence from the language of the collective bargaining agreement nor did the magistrate judge's report and recommendation upholding that award. The Court therefore will reject the magistrate judge's report and recommendation, sustain the plaintiff's objections, grant summary judgment in the plaintiff's favor, and vacate the arbitration award.

Dkt # 36, Op.& Order. The basis of the Court's decision was explained in detail. The Court wrote:

> The Court therefore is left with a relatively narrow issue for review. The question becomes whether Article 14 of the collective bargaining agreement addressing insurance prohibits Michigan Sugar from suspending unearned health benefits to workers who do not report for work.
>     Michigan Sugar maintains the same position that is has throughout this litigation: the company has no duty to pay workers who do not report to work and no duty to finance a work cessation. Essentially, it reasons that the withholding of health benefits is equivalent to not paying workers when they fail to show up for work. Specifically, Michigan Sugar asserts that the arbitrator sought to reason from

provisions of Article 14 that expressly do not apply to this situation. The Court is constrained to agree with the plaintiff.

The crux of the problem with the arbitrator's decision directly follows his conclusion that Michigan Sugar's suspension of health care benefits was not "discipline" within the meaning of Article 3, Section 9, but otherwise violates the collective bargaining agreement because he viewed it as "extremely coercive." He writes:

> There is an issue of whether cancelling health benefits is considered discipline. In the classic sense, the word "discipline", as it is used in this setting, is generally thought of as being a response to misconduct. The Employer suggests its action were not discipline, but in essence of withholding something not earned and an attempt not to help finance a strike. However, the language goes on to speak of 'discipline of any kind' which suggests the broadest definition of the term. Nonetheless, based on this record, I am not persuaded that the term "discipline of any kind" encompasses the cancellation of health care benefits. However, while perhaps not discipline, the withholding of such benefits is extremely coercive, and as I have indicated, *a violation of the agreement.*

Arbitrator Op. & Award at 20 (emphasis added). The arbitrator's statements, however, beg the question of what language in the collective bargaining agreement the plaintiff violated.

The arbitrator appears to base his conclusion on the view that workers who do not report to work because they do not wish to cross picket lines should be compensated since they should be treated no less favorably than those who are terminated without cause or commit more serious offenses than failing to show up to work such as physically assaulting a supervisor:

> [I]t would be entirely appropriate to conclude that even if the Employer's position regarding the scope of the language in Section 9 of Article 3 was correct, and even if the termination of health insurance was not considered discipline, the existence of the language in paragraph b of Section 4 of Article 14 expresses the mutual intent of the parties that employees will have a minimum of 30 days of paid health insurance under any circumstances that could arguably fall within the definition of termination of employment.
>
> Since that's the case, and it appears from the record that even an employee who engaged in severe misconduct, such as striking a supervisor or theft, it logically follows that the circumstances the contention of its found the 30 day Sifind have suggested that the language in question prohibits a termination of insurance until that point that employees suffer a classic termination of employment such

> as a discharge, and thus insurance coverage fro the grievants should continue indefinitely because there has been no termination of employment. However, given the totality of the circumstances and the contract language, I am not prepared to reach that conclusion. The grievants are still employees even though they have honored the picket lines in question. Employees, such as the grievants, are entitled to health insurance coverage. Absent contract language, the Employer may have had the right to withhold the benefit. However, Section 4 of the Article 14 redefines the relationship regarding the termination of this benefit. Based on this record, I am persuaded that intent of the parties, as expressed by the language in question, established that individuals who engage in the activity the grievants have in this case fall within the protection of paragraph b of Section 4 of Article 14.

*Id.* at 15-16. Thus, the arbitrator's conclusion is premised on two things: that "termination" can be read broadly to encompass employees who do not show up to work to avoid crossing a picket line; and Article 14, Section 4 somehow redefines the employee-employer relationship to permit such a broad reading of that term.

The Court cannot agree with this analysis. The language in Article 14, Section 4(b) is unambiguous; it addresses "Termination of Employment." The employees in this case were not terminated. They returned to work after the intermittent work stoppage. Instead, the arbitrator's broad reading of the word "termination" is derived from the following reasoning:

> One of those provisions . . . is Section 4 of Article 14 - <u>Insurance</u>.
>
> [T]o quickly summarize, it establishes that if a regular employee is laid off, the Employer will assume the cost of the benefit for a six-month period. At the end of six months the employee can pay for the insurance through the group plan. The second paragraph, and the one most pertinent to this dispute, concerns "termination of employment." The language provides that except in circumstances involving a "normal layoff or retirement with pension," an employee's hospitalization, etc, shall be cancelled in 30 days unless it is continued under paragraph c of Section 2. As I read [that provision] it does not apply to this dispute. However, the language dealing with the continuation of insurance for a 30-day period, and that's how I construe it, does, in my view, have application in this dispute. The term "termination of employment" can be construed narrowly to mean discharge, resignation of employment or other events which lead to the classically understood termination of employment which completely severs all aspects of the employee/employer relationship. However, it could also be

> interpreted in a broader sense to mean that employees who are not working, but yet have some relationship with the Employer, will not have their coverage cancelled until 30 days have passed. . . . I assume . . . that even if an individual were terminated for cause, their insurance would continue for at least 30 days. There are other provisions of the agreement which speak of insurance, but they generally do so in relation to specific concerns . . . .[T]here is no specific reference to termination of insurance.

*Id.* at 14-15.

The arbitrator makes no reference to the source of his "interpretation" in the collective bargaining agreement. In the Court's view, however, this reading of an unambiguous provision of the collective bargaining agreement fails to "draw its essence from the bargaining agreement" and constitutes "the arbitrator's own brand of industrial justice." *Sterling China*, 357 F.3d at 656.

Importantly, the arbitrator ignores a key provision of the agreement. Article 2 expresses the company's reservation of rights: "The company shall retain all rights, powers, and authority it had prior to entering into this Agreement, including, but not limited to the sole right to manage its business and direct the working force, subject *only* to such regulations governing the exercise of these rights as are expressly provided in this Agreement." CBA at 4 (emphasis added). Thus, absent any provision prohibiting the employer from suspending health care benefits that have not yet been earned by employees, such remedy is permissible under the agreement.

Plainly, had the arbitrator (or the defendants challenged on review) concluded that the employees were disciplined in violation of Article 3, Section 9, the result would have been different. Indeed, the aggrieved employees would have the right to maintain an action at law or in equity against Michigan Sugar for redress of their injuries. *See* CBA at 7. However, the arbitrator did not make a finding that discipline occurred. Because the arbitrator's conclusion was based on a provision of the collective bargaining agreement that clearly has no application in this situation, Article 14, and his personal conclusion that Michigan Sugar's activity was "extremely coercive" and thus violated the collective bargaining agreement, the Court believes that both the arbitrator and the magistrate judge reached the incorrect result.

*Id.* at 17-20.

On February 6, 2007, the defendants filed a motion for reconsideration, to which the plaintiff has responded. Although the defendants point to more recent case law on the standard of review this Court ought to employ, that case law articulates the same standard upon which the Court relied in making its determination. *See Michigan Family Resources, Inc. v. Service Employees International*

*Union, Local 517 M*, 475 F.3d 746, 752 (6th Cir. 2007) (noting the following bases for challenging an arbitration award: "whether the arbitrator acted outside his authority by resolving a dispute not committed to arbitration, whether the arbitrator committed fraud, had a conflict of interest, or otherwise acted dishonestly in issuing the award, and whether the arbitrator, in resolving any legal or factual disputes in the case, was arguably construing or applying the contract; so long as the arbitrator does not offend any of these requirements, the request for judicial intervention should be resisted even though the arbitrator made serious, improvident, or silly errors in resolving the merits of the dispute").

The defendants do not allege fraud, a conflict of interest, or other basis for challenging the award. They simply claim that the arbitrator was "arguably construing" the provisions of the collective bargaining agreement. That contention was fully addressed and the case law to which the defendants point simply articulates the same standard this Court already applied. In order to prevail on a motion for reconsideration, the moving party shows: (1) a "palpable defect," (2) that misled the Court and the parties, and (3) that correcting the defect will result in a different disposition of the case. E.D. Mich. LR 7.1(g)(3). A "palpable defect" is a defect which is obvious, clear, unmistakable, manifest, or plain. *Fleck v. Titan Tire Corp.,* 177 F. Supp. 2d 605, 624 (E.D. Mich. 2001). Furthermore, the Local Rules provide that any "motion for rehearing or reconsideration which merely present the same issues ruled upon by the Court, either expressly or by reasonable implication, shall not be granted." E.D. Mich. LR 7.1(g)(3).

As the Court explained in detail in its opinion, the arbitrator arguably construed something, just not the *collective bargaining agreement*. Instead of deriving his decision from the plain language of the agreement, he created a definition of the term "termination" that did not find its

source in that document.  Thus, the Court has ruled on this precise issue and finds no reason, based on the supplementary authority, to once again reexamine the issue.

Accordingly, it is **ORDERED** that the defendants' motion for reconsideration [dkt # 38] is **DENIED**.

s/Thomas L. Ludington  
THOMAS L. LUDINGTON  
United States District Judge

Dated: April 11, 2007

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on April 11, 2007.

s/Carol J. Greyerbiehl  
CAROL J. GREYERBIEHL

---